# 1334

## MONROE COAL MINING COMPANY, PETITIONER, v. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 7322.   Promulgated December 12, 1946.

*J. R. Fillman, Esq.*, for the petitioner.
*William D. Harris, Esq.*, for the respondent.

### OPINION.

JOHNSON, *Judge*: The Commissioner determined a deficiency of $7,503.16 in petitioner's income tax for 1940, in part by the disallowance of a claimed net operating loss deduction of $45,605.65 carried over from 1939 and by eliminating from the gross income of petitioner's coal mining property $7,128.02 received from the sales of scrapped equipment and $468.08 representing discounts allowed because of prompt payment for operating equipment purchased. These eliminations reduced the income from the property, and consequently the amount deductible as percentage depletion. The case was presented upon a stipulation of facts, which is incorporated herein by reference.

1. Petitioner is a Pennsylvania corporation, with principal office at Philadelphia, and it filed its income tax return for 1940 with the

collector of internal revenue for the first district of Pennsylvania, at Philadelphia. It is engaged in the mining and sale of bituminous coal, and keeps its books and prepares its income tax returns by an accrual method of accounting. In its return for 1934 it elected to have the allowance for depletion of its mines computed by the percentage method authorized in section 114 (b) (4), Revenue Act of 1934, which was reenacted as section 114 (b) (4) of the Internal Revenue Code. Under that section such allowance is fixed for a coal mine at 5 per cent of the gross income from the property, not to exceed 50 per cent of the net income therefrom. The parties have stipulated that petitioner had net income of $79,549.71 from its property in 1940 and in addition thereto realized $7,128.02 from the sale of discarded rails, mine car wheels, and other parts of equipment used in mine operation, and $468.08 which it received from suppliers as cash discounts because of its prompt payment of invoices rendered for items acquired for use in mine operation. It contends that these two amounts should be included in its income from the mining property and thereby serve to increase its allowance for depletion.

By section 114 (b) (4) (B), Internal Revenue Code, as amended by section 124 (c), Revenue Act of 1943, "gross income from the property," is defined as:

* * * the gross income from mining. The term "mining," as used herein, shall be considered to include not merely the extraction of the ores or minerals from the ground but also the ordinary treatment·processes normally applied by mine owners or operators in order to obtain the commercially marketable mineral product or products. The term "ordinary treatment processes," as used herein, shall include the following: (i) In the case of coal—cleaning, breaking, sizing, and loading for shipment; * * *

By section 124 (d) of the 1943 Act the foregoing definition was made applicable to taxable years beginning after December 31, 1931, and as a result of the statutory definition, then first enacted, the Commissioner changed section 29.23 (m)–1 (f), of Regulations 111, defining "gross income from the property" as "the amount for which the taxpayer sells the crude mineral product of the property" to "gross income from mining," adding all of the above quoted language of the subsection.

It is obvious that income realized from the disposal of discarded equipment and from discounts for the prompt payment of bills did not result from a sale of the crude mineral product and hence is not within gross income under the regulations as worded in 1941. We think it equally true that such income was not from mining. Conceivably the cost of the equipment was deducted by petitioner as a business expense, although the meager description of the items indicates rather a capital investment. But assuming, *arguendo*, that such cost was deducted and in a prior year was reflected in the computation

of net income from the property, we find no warrant in the statute to deem the sale proceeds and the discounts as gross income from mining. References in the quoted subsection to treatment processes as included in the meaning of mining are intelligible only in connection with the computation of net income, and can not be distended to comprise income-producing activities which, although closely connected, are not mining in the same sense that a liquidation of all petitioner's operating plant and equipment would not be mining.

In *Repplier Coal Co.* v. *Commissioner* (C. C. A., 3d Cir.), 140 Fed. (2d) 554; certiorari denied, 323 U. S. 736, profits realized by a mining company from the rental of homes and the sale of supplies to its employees were held not to be "gross income from the property" and the same conclusion was reached in respect of income from a store and tenements operated for employees. *Dorothy Glenn Coal Mining Co.*, 38 B. T. A. 1154. The argument that income from such sources in effect served to reduce the cost of labor was rejected. We believe that the same reasoning requires the same conclusion in this case. "Gross income from the property" is to be strictly construed, and is not subject to the nice adjustments recognizable in computing income for the general purposes of the act. Cf. *F. H. E. Oil Co.*, 3 T. C. 13; affd. (C. C. A., 5th Cir.), 147 Fed. (2d) 1002; *Montreal Mining Co.*, 2 T. C. 688; modified (C. C. A., 6th Cir.), — Fed. (2d) — Oct. 12, 1946). We hold, therefore, that the sale proceeds of discarded equipment and the discounts for prompt payment for new equipment did not constitute gross income from the property and were properly excluded therefrom.

2. On its income tax return for 1940 petitioner claimed as a deduction $45,605.65 as representing a net operating loss. The Commissioner disallowed this deduction. The parties now stipulate that:

For the calendar year 1939 the petitioner had a net operating loss determined n accordance with the provisions of Section 122 (a) of the Internal Revenue Code, in the amount of $64,719.86, in which there is included the amount of $30,499.21, representing the amount of cost or unit depletion computed on the adjusted basis pertaining to the petitioner's coal mines.

Petitioner contends that in its operating loss deduction for 1940 it is entitled to reflect an operating loss carry-over from 1939, computed to include a depletion allowance on the cost or unit basis. As it elected the percentage method for the computation of its depletion allowance and sustained an operating loss in 1939, it was entitled to no deduction in that year on account of depletion. Without claiming a right to such a deduction in 1939, it now seeks to increase its carry-over loss by the addition of a depletion allowance for 1939 computed on the cost or unit basis, and invokes section 122 (d) (1) of the Internal Revenue Code as supporting its claim.

A similar issue was decided adversely to petitioner's contention in *Virgilia Mining Corporation*, 7 T. C. 385. We therein held that the cited subsection, in limiting the depletion deduction reflected in a carry-over loss to "the amount which would be allowable if computed without reference to discovery-value or to percentage depletion under section 114 (b) (2), (3) or (4)" was not intended to grant a taxpayer using the percentage method of depletion a right to reflect a cost or unit depletion allowance in his carry-over loss if he had been entitled to no deduction by the percentage method. In so holding, the Court said:

> The purpose of (d) (1) is, thus, not to grant any deduction for depletion where none is otherwise granted, but is to limit, in certain cases, the deduction otherwise allowable under other provisions of the Code. It is a limitation, not a granting provision.

Petitioner contends further that even if its carry-over loss may not be increased by a depletion allowance for 1939, the amount so deductible "should not be reduced by percentage depletion of the subsequent year, but should be reduced only by the excess of percentage depletion over depletion based upon cost. To hold otherwise would be to deprive the petitioner of the economic loss which it clearly suffered." Section 122 (c) fixes the amount of the net operating loss deduction as:

> * * * the amount of the net operating loss carry-over reduced by the amount, if any, by which the net income (computed with the exceptions and limitations provided in subsection (d) (1), (2), (3), and (4)) exceeds * * * in the case of a corporation, the normal-tax net income (computed without such deduction) ; * * *

The exception or limitation of subsection (d), here pertinent, is:

> (1) The deduction for depletion shall not exceed the amount which would be allowable if computed without reference to discovery value or to percentage depletion under section 114 (b) (2), (3), or (4) ; * * *

It is stipulated that for 1940 petitioner's "cost or unit depletion allowance computed on the adjusted basis would be $29,339.09," and petitioner argues that this figure "would be allowable" if its depletion deduction were computed without reference to discovery value or to percentage depletion, and it seeks to reflect a deduction of that amount in the computation contemplated by section 122 (c).

For 1939 petitioner had no net income from the property and hence no depletion allowance which section 122 (d) (1) could limit; and this Court held in *Virgilia Mining Corporation, supra*, as we hold here, that this subsection does not grant an allowance computed by another method when no allowance is available under the method elected by the taxpayer.

For 1940, however, petitioner had a net income of $79,549.71 from its mining property, of which 50 per cent, or $39,774.85, is available as a deduction for depletion computed by the percentage method and is allowed as such in the notice of deficiency. But for the purpose of computing the net operating loss carry-over available as a deduction under section 122, the respondent contends that:

The net income for the year 1940 should be reduced by the entire amount of percentage depletion for the reason that under the limitation provided in section 122 (d) (1) the deduction for depletion may not exceed the *amount* which would be allowable without reference to percentage depletion, which, as argued in connection with the computation of the net operating loss for 1939, is zero. * * *

We are of opinion that this contention is without merit. Petitioner had a percentage depletion allowance in 1940 and section 122 (d) (1) does not purport to exclude it from a computation of the deduction available as prescribed by section 122 (c), but merely limits it to "the amount which would be allowable if computed without reference to * * * percentage depletion." The amount which would be allowable if petitioner had not elected percentage depletion is the figure representing cost or unit depletion, stipulated to be $29,339.09. This figure, therefore, should be included as a deduction in a computation of "the net income (computed with the exceptions and limitations provided in subsection (d) (1), (2), (3), and (4))" in arriving at the amount of the net operating loss deduction as defined by section 122 (c).

In so holding we would emphasize that this petitioner is not being allowed a deduction based on cost or unit depletion, as respondent suggests would result from such a holding, but that the figure representing cost or unit depletion merely serves as a measure of the amount of the percentage depletion allowance of $39,774.85 which may be used as a deduction for the purposes of section 122 (c). The language of section 122 (d) (1) clearly contemplates the availability of a "deduction for depletion which shall not exceed" an amount which would be allowable without reference to percentage depletion. Such language imposes a limitation on amount, not a suppression of the deduction, as seems obvious from a comparison of section 122 (d) (3), which provides that "no net operating loss shall be allowed."

*Decision will be entered under Rule 50.*