ELK LICK COAL COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 39215.   Filed December 31, 1954.

*C. H. Welles, 3d, Esq.*, for the petitioner.
*Edward Pesin, Esq.*, for the respondent.

OPINION.

RICE, *Judge:* This proceeding involves deficiencies in income tax determined against the Elk Lick Coal Company (hereinafter referred to as the petitioner) as follows:

| Year | Amount |
| --- | --- |
| 1947 | $2, 661. 77 |
| 1948 | 1, 294. 84 |
| 1949 | 177. 76 |

The only issue raised is whether certain losses sustained by the petitioner during each of the years in question are deductible from its gross income in determining net income for purposes of computing its annual depletion allowance under sections 23 (m) and 114 (b) (4) (A) and (B)[1] of the Internal Revenue Code of 1939 in effect for the taxable years here involved.

---

[1] SEC. 23. DEDUCTIONS FROM GROSS INCOME.

(m) DEPLETION.—In the case of mines, oil and gas wells, other natural deposits, and timber, a reasonable allowance for depletion and for depreciation of improvements, according to the peculiar conditions in each case; such reasonable allowance in all cases to be made under rules and regulations to be prescribed by the Commissioner, with the approval of the Secretary. * * *

For percentage depletion allowable under this subsection, see section 114 (b), (3) and (4).

SEC. 114. BASIS FOR DEPRECIATION AND DEPLETION.

(b) BASIS FOR DEPLETION.—

    *       *       *       *       *       *       *

(4) PERCENTAGE DEPLETION FOR COAL, BAUXITE, FLUORSPAR, FLAKE GRAPHITE, VERMICULITE, BERYL, FELDSPAR, MICA, TALC (INCLUDING PYROPHYLLITE), LEPIDOLITE, SPODUMENE,

All of the facts were stipulated, are so found, and are incorporated herein by this reference.

Petitioner is a corporation with principal offices at Scranton, Pennsylvania. It filed its returns for each of the calendar years in issue with the collector of internal revenue for the twelfth district of Pennsylvania.

Petitioner was engaged in mining, preparing, and marketing coal during each of the years in question. In 1947, it abandoned old No. 2 tipple, head-house, lamp-house, lobby, and outside tracks at its Gauley Mine Opening No. 2 with a resulting loss, after salvage, of $17,523.38.

In 1948, petitioner abandoned the slate dump building at Gauley Mine Opening No. 2 and the machine and repair shop at Gauley Mine. Opening No. 3 with a resulting loss of $4,878.22.

In 1949, eleven of petitioner's mine cars were scrapped at a loss of $1,478.07, and one sand dryer was wrecked at a loss of $67.79.

The items abandoned in 1947 and 1948 and the sand dryer wrecked in 1949 were part of petitioner's mining plant used by it in preparing the extracted coal for market. The mine cars scrapped in 1949 were part of petitioner's mining equipment used for extracting coal from the ground.

Under section 23 (f) of the 1939 Code, petitioner claimed deductions on its return for each of the years in issue for the losses sustained by it on the items abandoned, worn out, scrapped, or wrecked as follows:

| Year | Losses |
| --- | --- |
| 1947 | $17,523.38 |
| 1948 | 4,878.22 |
| 1949 | 1,545.86 |

The respondent allowed the losses as claimed.

The petitioner, however, did not deduct such allowed losses from its "gross income" to arrive at its "net income" as defined by section

Footnote 1—Continued.

BARITE, BALL, SAGGER, AND CHINA CLAY, ROCK ASPHALT, PHOSPHATE ROCK, TRONA, BENTONITE, GILSONITE, THENARDITE, AND METAL MINES, POTASH, AND SULFUR.—

(A) In General.—The allowance for depletion under section 23 (m) shall be, in the case of coal mines, 5 per centum, * * * of the gross income from the property during the taxable year, * * *. Such allowance shall not exceed 50 per centum of the net income of the taxpayer (computed without allowance for depletion) from the property, except that in no case shall the depletion allowance under section 23 (m) be less than it would be if computed without reference to this paragraph.

(B) Definition of Gross Income From Property.—As used in this paragraph the term "gross income from the property" means the gross income from mining. The term "mining", as used herein, shall be considered to include not merely the extraction of the ores or minerals from the ground but also the ordinary treatment processes normally applied by mine owners or operators in order to obtain the commercially marketable mineral product or products. The term "ordinary treatment processes", as used herein, shall include the following: (1) In the case of coal—cleaning, breaking, sizing, and loading for shipment; * * *

29.23 (m)–1 (*g*) of Regulations 111 [2] for purposes of determining the depletion allowable to it under sections 23 (m) and 114 (b) (4) (A) and (B). The respondent determined that the losses should have been deducted.

Petitioner's argument here is that because the gain from the sale of abandoned mining equipment would not be includible in its gross income, for the purpose of determining the depletion allowable to it, the loss realized on such equipment when abandoned should not be deducted in computing net income for the same purpose, citing *Monroe Coal Mining Co.*, 7 T. C. 1334 (1946).

The petitioner's argument founders on an erroneous analysis of our holding in the *Monroe* case, and a failure to recognize what the Code provides and, equally important here, what it does not provide, in setting the limits of the allowance for percentage depletion.

We held in *Monroe Coal Mining Co.*, *supra*, that gain realized from the sale of discarded mining equipment was not includible in "gross income" for the purpose of determining the depletion deduction. This, we said, was true because Congress had specifically defined "gross income from the property" in section 114 (b) (4) (B) as being the gross income from mining—both the extraction of the coal, and the ordinary treatment processes of cleaning, breaking, sizing, and loading it to obtain a commercially marketable product. We did not see how gain from the sale of discarded equipment, even though used in the production of coal, could come within the clearly expressed statutory definition.

It does not follow, however, as contended by the petitioner here, that losses from the abandonment or scrapping of such equipment or plant component should be excluded as a deduction from gross income in computing net income for purposes of determining the depletion allowance. The Code is silent as to any definition of "net income" as used in section 23 (m) or 114 (b). The Commissioner's regulations, however, do define that term. Section 29.23 (m)–1 (*g*) of Regulations 111 provides:

"Net income * * *" means the "gross income from the property" * * * less the allowable deductions attributable to the mineral property upon which the

---

[2] SEC. 29.23(m)–1. DEPLETION OF MINES, OIL AND GAS WELLS, OTHER NATURAL DEPOSITS, AND TIMBER; DEPRECIATION OF IMPROVEMENTS.—

\* \* \* \* \* \* \*

(*g*) "Net income of the taxpayer (computed without allowance for depletion) from the property," as used in section 114 (b) (2), (3), and (4) and sections 29.23(m)–1 to 29.23(m)–19, inclusive, means the "gross income from the property" as defined in paragraph (*f*) of this section less the allowable deductions attributable to the mineral property upon which the depletion is claimed and the allowable deductions attributable to the processes listed in paragraph (*f*) in so far as they relate to the product of such property, including overhead and operating expenses, development costs properly charged to expense, depreciation, taxes, losses sustained, etc., but excluding any allowance for depletion. Deductions not directly attributable to particular properties or processes shall be fairly allocated. \* \* \*

depletion is claimed and the allowable deductions attributable to * * * [cleaning, breaking, sizing, and loading the coal for shipment] in so far as they relate to the product of such property, including overhead and operating expenses, development costs properly charged to expense, depreciation, taxes, losses sustained, etc., * * *

We think it clear from the definition so spelled out that "net income" is to be determined by deducting from gross income the losses in question here because they are directly related to the mining and preparation of coal. We are, in fact, unable to understand what other meaning could be attributed to the plain language—"losses sustained"—as used in the regulations. Certainly "depreciation" as used therein applies to the mining plant and equipment. We are satisfied that the term "losses sustained" similarly applies, and that the petitioner's argument to the contrary would amount to nothing less than reading that provision out of the regulations. We prefer to accept its obvious meaning.

The petitioner cites as an example of a loss, deductible in determining net income, the damage resulting from a car of coal running off the track. Such a loss, it says, "would be a proper deduction in arriving at net income from the property because it was damage to the operating equipment." The wreckage of petitioner's sand dryer, with a resulting loss of $67.79 in 1949, would appear to fall squarely within its own concept of a properly deductible loss. But apparently the petitioner sees some subtle difference here which we do not. We are unable to see what possible distinction there is between a loss arising from wreckage of the equipment and a loss arising from its abandonment. Both are deductible in computing net income for purposes of determining the percentage depletion allowance.

*Decision will be entered for the respondent.*