**ISLAND CREEK COAL COMPANY,**
**Petitioner,**

v.

**COMMISSIONER OF INTERNAL REV-**
**ENUE, Respondent.**

**No. 10028.**

United States Court of Appeals
Fourth Circuit.

Aug. 21, 1967.

---

1. Cf. the procedure adopted by the Court of Appeals for use in the circuit in United States v. Inman, 4 Cir., 1965, 352 F.2d 954.

David B. Buerger, Pittsburgh, Pa. (William Y. Rodewald and Buchanan, Ingersoll, Rodewald, Kyle & Buerger, Pittsburgh, Pa., on brief), for petitioner.

Crombie J. D. Garrett, Atty., Dept. of Justice (John B. Jones, Jr., Acting Asst. Atty. Gen., and Lee A. Jackson and Melva M. Graney, Attys., Dept. of Justice, on brief), for respondent.

Before HAYNSWORTH, Chief Judge, and SOBELOFF and BOREMAN, Circuit Judges.

HAYNSWORTH, Chief Judge:

■ For purposes of computing the maximum limitation upon an allowance for depletion to an operator of coal mines, we hold that an expenditure is not deductible in computing "taxable income from the property" when the taxable income generated by the expenditure is not includible in "gross income from the property."

In addition to ordinary fire insurance on its treatment plants, Island Creek Coal Company purchased business interruption insurance to indemnify it for losses in net profits resulting from lost production occasioned by fire damage to the treatment plants. Two of its treatment plants suffered extensive fire damage on the same day. Production was lost, and Island Creek collected from its insurance carrier, $240,664 as reimbursement for its losses in net profits. The receipt, of course, was taxable income to Island Creek, and, in computing the limitation upon its percentage depletion allowance under § 613 (a) of the Internal Revenue Code of 1954, Island Creek included that amount in its "gross income from the property," and deducted the related premium cost of $94,600 in computing its "taxable income from the property." This was an overstatement of its income from the property, as the taxpayer conceded in the Tax Court, for the income receipt was not properly attributable to mining.[1] The taxpayer contended, however, that, if the

---

1. Guthrie v. United States, 6 Cir., 323 F.2d 142. It was occasioned not by the production of coal with consequent depletion of the ore body, but was paid solely in lieu of lost profits.

receipt was not includible in its gross income from mining, the related expenditure should be excluded from its deductions in computing its taxable income from the property. The Tax Court disagreed,[2] and the taxpayer sought review, protesting the reduction in its depletion allowance by the amount of the contested deduction.

Under § 613, a coal miner is entitled to a percentage depletion allowance equal to ten per cent of its "gross income from the property," which is defined in subsection (c) (1) as "gross income from mining." By subsection (c) (4), "mining" encompasses certain treatment processes, following actual extraction, including, in the case of coal, cleaning, breaking, sizing, protecting and loading the coal. All of the operations in Island Creek's treatment plants are thus treated as part of the mining process. Our problem arises, however, out of the ceiling imposed by § 613(a), for if ten per cent of the gross income from the property exceeds fifty per cent of the taxable income from the property, the excess is not an allowable deduction. That limitation governs Island Creek's depletion allowance, occasioning the question of the propriety of including the cost of the premium in the deductions from gross income from mining to arrive at "taxable income from the property (computed without allowance for depletion)."

The statute does not explicitly define the term "taxable income from the property." There was no necessity of it, for the definition of "gross income from property" in terms of "mining" and the included treatment processes makes it perfectly clear that "taxable income from the property" means taxable income from mining and the included treatment processes. Taxable income from mining is computed by deducting from gross income from mining all of the mining expenses incurred in the production of that income. An expense incurred to produce

income which is not income from mining, is not an expense of mining.

To be sure, the indirect expenses of mining must be deducted along with the direct expenses. These include overhead, taxes, allowable depreciation on capital assets used in the mining operation and the cost of money borrowed to acquire or construct such assets. If a taxpayer has only mining income, all of his ordinary expenses of doing business, including the cost of ordinary fire insurance to replace capital losses, are probably expenses of mining, for each contributes indirectly to the realization of income from mining. If a mine operator receives nonmining income, however, the expenses which generated the income should be treated as nonmining expenses. There is no more conceptual difficulty in recognizing the cost of the premium as a nonmining expense than in recognizing the related recovery as nonmining income.

Island Creek, of course, was not engaged in a separable business of investing for gain in nonmining contracts, but that is surely unnecessary. In the usual *Cannelton*[3] situation, in which the operator's treatment processes go beyond those classified by the statute as part of the mining process, the operator is not in any sense engaged in separable businesses. Clearly, however, a portion of its receipts is, and must be allocated to nonmining income and there is a similar allocation of expenses. There is nothing in the statute to justify classification of an expense as one of mining, when it contributes nothing to the production of mining income but does directly result in the receipt of nonmining income.

Elsewhere in the Code, as in § 861(b) dealing with taxable income from sources within and without the United States, whenever a segregation and allocation of income receipts are required they must be accompanied by a similar segregation and allocation of related expenses.

2. Island Creek Coal Co., 43 T.C. 234 (1964).

3. United States v. Cannelton Sewer Pipe Co., 364 U.S. 76, 80 S.Ct. 1581, 4 L.Ed. 2d 1581.

We find nothing in the Tax Court's decisions in Elk Lick Coal Co., 23 T.C. 585 (1954), or in the earlier Island Creek Coal Company case, 30 T.C. 370 (1958), to support its decision in this case.

Under *Elk Lick*, it is clear that a loss upon an abandonment of mining equipment is an expense of mining, though a gain on the sale of such equipment might not be income from mining, but that is not a separation of related receipts and disbursements. When mining equipment is purchased, it is an expense of mining; the entire cost is then devoted to mining. The cost must be capitalized and is recoverable for tax purposes only upon subsequent deductions for depreciation and ultimate abandonment. The capitalization requirement, however, simply postpones to later years portions of the deduction of the cost of the equipment; it does not change the character of the original cost as an expense of mining. There is a different situation when a profit is realized upon the sale of equipment withdrawn from the mining operation. The profit is not a mining profit. It does not arise out of the extraction and included treatment processes, but withdrawal of equipment from the mining operation does not change the character of the expense of its initial acquisition. It was a mining expense when incurred, and subsequent events do not partially convert it into something else.

In the earlier *Island Creek* case, the Tax Court held that receipts from the sale of scrap were nonmining income, but that is irrelevant here. It did not hold that the expense of collecting and selling the scrap was mining expense.[4] There is nothing there in the least militating against the principle that, when nonmining income is segregated from mining income, related expenses go with it, or against its application here.

■ Nothing we have said suggests that the cost of business interruption insurance is not deductible as an ordinary and necessary expense of the business. If it is deductible by a manufacturer, it is deductible by a mine operator. We deal here not with the general computation of net taxable income, but with a subordinate computation utilized for the sole purpose of limiting the depletion allowance. That computation requires the segregation of "nonmining" income and, we hold, of the related expenses which generate the nonmining income, though both the receipts and the disbursements may be ordinary to the taxpayer. The relation of a premium for business interruption insurance to a mine operator's general business may be close, but its furtherance of the processes of extraction and treatment is, at best, remote, while its relation to nonmining income is direct and immediate, for the premium is paid for the protective purpose of generating such income.

Reversed.

---

4. The taxpayer has produced excerpts from the record indicating that it was recognized that, had those expenses been proven, they would have been excluded from the mining expense deduction. That recognition is entirely consistent with our conclusion.