## MAGALE v. UNITED STATES.
### No. 49260.

United States Court of Claims.
Dec. 5, 1950.

Walter E. Barton, Washington, D. C., for plaintiff.

Elizabeth B. Davis, Washington, D. C., with whom was Asst. Atty. Gen. Theron Lamar Caudle, for defendant. Andrew D. Sharpe and Ellis N. Slack, Washington, D. C., were on the brief.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and HOWELL, Judges.

JONES, Chief Judge.

This is a suit for a refund of income tax paid in 1940 on the ground that plaintiff should have been allowed to deduct from net income in that year a net operating loss carried over from 1939.

During 1939 and 1940 plaintiff and his wife were engaged in the oil production business. All of their income was community income under the laws of the State of Louisiana. Plaintiff's income tax return for 1939 reported a community net operating loss of $33,067.60, one-half of which, or $16,533.80, was sustained by plaintiff. However, it is stipulated that the correct community net operating loss for 1939 was $28,165.60; one-half of this amount, or $14,082.80, is the correct net operating loss sustained by plaintiff in 1939.

For the following year, 1940, plaintiff reported a net income of $15,836.55, representing one-half of a community net income of $31,673.10. To arrive at this amount for community net income a deduction of $39,409.32 was made for percentage depletion [1] in 1940 and a deduction of $33,067.60, representing the net operating loss carried over from 1939. It is now

---

1. Section 23(m) of the Internal Revenue Code, 26 U.S.C.A., as enacted on February 10, 1939, provided that in computing net income an allowance for deple-

conceded that the correct amount of percentage depletion for the community for 1940 was $36,221.75; one-half of this, which is the percentage depletion deduction plaintiff was entitled to, is $18,110.87.

On his reported income for 1940 of $15,-836.55 plaintiff paid a tax of $1,653.50. After examining plaintiff's return the Commissioner of Internal Revenue determined that plaintiff's net income for 1940 was $33,222.83 and that plaintiff owed an additional tax of $5,595.98 for the year. In determining plaintiff's net income for 1940 to be $33,222.83 the Commissioner did not allow plaintiff a deduction for a net operating loss carry-over from 1939 of $14,082.80, or any other amount. Plaintiff filed a claim for refund of tax overpaid in 1940 on the ground that the Commissioner should have allowed plaintiff a deduction as a net operating loss carry-over from 1939. The Commissioner has rejected plaintiff's claim. Plaintiff has brought suit here alleging that he overpaid income tax and interest for 1940 of $4,433.61 and $931.07, respectively. He seeks judgment against the United States for $5,364.68 with interest.

In computing plaintiff's net income for 1940 the Commissioner did not allow plaintiff any net operating loss deduction. This was on the theory that the amount of the net operating loss carry-over from the preceding year should first be reduced by the amount of the percentage depletion deduction sustained in 1940. The sole question is whether the Commissioner's application of the law was correct. We hold that it was.

The net operating loss deduction was authorized by the Revenue Act of 1939, 53 Stat. 862, 867, which inserted Sections 23(s) and 122 in the Internal Revenue Code, 26 U.S.C.A.[2] Regulations govern-

tion of wasting assets such as oil wells should be deducted from gross income. 53 Stat. 1, 14. Percentage depletion allowable under this Section was computed pursuant to Section 114(b) (3) of the Code, 26 U.S.C.A. 53 Stat. 1, 45.

"§ 23. Deductions from gross income.
"In computing net income there shall be allowed as deductions:

*    *    *    *    *    *

"(s) *Net operating loss deduction.*—For any taxable year beginning after December 31, 1939, the net operating loss deduction computed under section 122."

*    *    *    *    *    *

"Sec. 122. Net operating loss deduction.
"(a) *Definition of Net Operating Loss.*—As used in this section, the term 'net operating loss' means the excess of the deductions allowed by this chapter over the gross income, with the exceptions and limitations provided in subsection (d).
"(b) *Amount of Carry-Over.*—The term 'net operating loss carry-over' means in the case of any taxable year the sum of:
"(1) The amount, if any, of the net operating loss for the first preceding taxable year; and
"(2) The amount of the net operating loss, if any, for the second preceding taxable year reduced by the excess, if any, of the net income (computed with

the exceptions and limitations provided in subsection (d) (1), (2), (3), and (4)) for the first preceding taxable year over the net operating loss for the third preceding taxable year.
"(c) *Amount of Net Operating Loss Deduction.*—The amount of the net operating loss deduction shall be the amount of the net operating loss carry-over reduced by the amount, if any, by which the net income (computed with the exceptions and limitations provided in subsection (d) (1), (2), (3), and (4) ) exceeds, in the case of a taxpayer other than a corporation, the net income (computed without such deduction), or, in the case of a corporation, the normal-tax net income (computed without such deduction);
"(d) *Exceptions and Limitations.*—The exceptions and limitations referred to in subsections (a), (b), and (c) shall be as follows:
"(1) The deduction for depletion shall not exceed the amount which would be allowable if computed without reference to discovery value or to percentage depletion under section 114(b) (2), (3), or (4);
"(2) There shall be included in computing gross income the amount of interest received which is wholly exempt from the taxes imposed by this chapter, decreased by the amount of interest paid or accrued which is not allowed as a deduction by section 23 (b), relating

ing the computation of the amount of net operating loss deduction allowable appeared in Regulations 103, Secretary of the Treasury, January 29, 1940. They are found in 26 C.F.R., 1940 Supp., 19.122–1 to 19.122–5, inclusive. Quoting from §. 19.122–1(b), "There are three steps in the ascertainment of the net operating loss deduction. The first is the determination of the net operating loss, if any, for the 2 preceding taxable years. The second is the computation of the net operating loss carryover. The third is the conversion of the net operating loss carry-over into the net operating loss deduction." See also Reo Motors, Inc., v. Commissioner of Internal Revenue, 338 U.S. 442, 446–447, 450, 70 S. Ct. 283. In the case at bar the net operating loss carry-over from 1939 to 1940 is equal to the net operating loss for 1939. The issue here is with respect to the third step, conversion of the carry-over into the deduction.

The Code provided, in Section 122(c), that the deduction should be the carry-over less the amount by which the net income, computed with certain exceptions and limitations, exceeded the net income, computed without these exceptions and limitations. The only exception or limitation pertinent here is that set out in Section 122(d) (1) of the Code, which provides, in effect, that the deduction for depletion shall not exceed cost depletion.[3]

The Stipulation of Facts filed by the parties does not show what plaintiff's depletion deduction for 1940 would have been if it had been computed on a cost-depletion basis. Plaintiff's returns are not in evidence. Consequently, we do not know what, if any, cost depletion plaintiff had for 1940. However, plaintiff has not disputed the assertion in defendant's brief that plaintiff claimed no cost depletion in 1940. On the record as we have it, we assume that plaintiff's cost depletion for 1940 was zero. Consequently, the amount by which the net income for 1940, computed with the exception or limitation set out in Section 122(d) (1), exceeds the net income, computed without it, is the amount of percentage depletion deducted in 1940. This is the amount, according to the Code and the Treasury Regulations, by which the net operating loss carry-over from 1939 is to be reduced in order to arrive at the net operating loss deduction allowable for 1940. 26 C.F.R., 1940 Supp., 19.122–5. This amount is $18,110.87; since it is greater than the net operating loss carry-over from 1939, plaintiff is entitled to no deduction in 1940 on account of losses carried over from 1939.

As we construe the rather complicated provisions of Section 122, the plaintiff is entitled to a carry-over deduction from 1939 to 1940 only if the 1939 carry-over exceeds the 1940 depletion allowance, and only to the extent of such excess. Since the carry-over from 1939 did not exceed

to interest on indebtedness incurred or continued to purchase or carry certain tax-exempt obligations;

"(3) No net operating loss deduction shall be allowed;

"(4) Long-term capital gains and long-term capital losses shall be taken into account without regard to the provisions of section 117 (b). As so computed the amount deductible on account of long-term capital losses shall not exceed the amount includible on account of the long-term capital gains, and the amount deductible on account of short-term capital losses shall not exceed the amount includible on account of the short-term capital gains;

"(5) Deductions otherwise allowed by law not attributable to the operation of a trade or business regularly carried on by the taxpayer shall (in the case of a taxpayer other than a corporation) be allowed only to the extent of the amount of the gross income not derived from such trade or business. For the purposes of this paragraph deductions and gross income shall be computed with the exceptions and limitations specified in paragraphs (1) to (4) of this subsection.

"(e) *No Carry-over from Year Prior to 1939.*—As used in this section, the terms 'third preceding taxable year', 'second preceding taxable year', and 'first preceding taxable year' do not include any taxable year beginning prior to January 1, 1939."

3. Cost depletion *is* depletion computed without reference to discovery value or percentage depletion. See 26 C.F.R., 1940 Supp., 19.23 (m)–2.

the depletion allowed plaintiff in 1940, the plaintiff is not allowed in 1940 the benefit of any carry-over deduction from 1939. In other words, the depletion allowance for 1940 more than absorbed the carry-over deduction that otherwise would have been allowed.

The Tax Court reached the same result in Louisiana Delta Hardwood Lumber Co., Inc., v. Commissioner of Internal Revenue, 7 T.C. 994. The facts there were similar to those in this case. The Commissioner, in arriving at the petitioner's net operating loss deduction for 1941, reduced his net operating loss carry-over from 1940 by the amount of the 1941 percentage depletion deduction. There was no allowable cost depletion in 1941, so the entire amount of the 1941 percentage depletion deduction was excess over cost depletion. The Tax Court sustained the Commissioner. Substantially the same arguments advanced to us by plaintiff in this case were made to the Tax Court by the petitioner in the Louisiana Delta case.

Plaintiff's basic contention is that the expression "net income" in Section 122(c) means the net income in the year in which the loss was sustained, that is, in 1939. The Government's contention is that the expression "net income" in that subsection means the net income in the year in which the net operating loss deduction is to be taken, that is, in 1940. As we have seen, Regulations 103 interpreted Section 122 to mean that the net income referred to in Section 122(c), to which the adjustments required by Section 122(d) are to be made, is the net income of the year for which the return is being made. The example given in House Report 855, 76th Congress, 1st Session, at page 18 sustains this interpretation. Furthermore, it appears that this is the interpretation put on the statute by commentators in the tax field. Raum, Carry-overs and Carry-backs in Connection With the Liquidation or Sale of a Business, 49 Col.L.Rev. 49, 51–52; Alvord, An Analysis of the Revenue Act of 1939, 18 Taxes (The Tax Magazine) 365, 368; Peterson,

What is New and Important in Our Net Operating Loss Problems? How to Use the Allowance Most Effectively, Sixth Annual Institute on Federal Taxation (1948) p. 870. Plaintiff, however, insists that subsection (d) was intended to apply only to the computation of net operating losses in prior years and not to the computation of the net income of the year in which the deduction is to be effective.

Plaintiff points out that, under the Commissioner's interpretation of Section 122, if the percentage depletion deducted in 1940 had to be restored to income in 1942, thereby absorbing a net operating loss in *that* year, there would be no net operating loss deduction for 1940 either on account of the carry-over from 1939 or on account of a carry-back [4] from 1942. Plaintiff submits that this result nullifies the Congressional intent to allow net operating losses to be carried over and back and that the only way to effectuate this intent is to limit the application of Section 122(d) to the year in which the net operating loss which is to be carried over or back is sustained.

The Tax Court disposed of essentially the same argument in the Louisiana Delta case in the following language, at page 997: "Petitioner further states that certain of the oil leases expired in 1942 and 1943 and that as a result portions of the percentage depletion taken in 1941 had to be restored to income in those later years. From this petitioner argues that it is a tax hardship on it to reduce its net operating loss deduction by percentage depletion which in later years may be restored to income. If there were merit in this contention, it would seem to us to be a fault which only Congress could correct." The result reached in plaintiff's hypothetical case does not offend against the purpose of the Code if we keep in mind that the circumstance which would require the restoration of percentage depletion to income would be the surrender without production of the leases on account of which percentage depletion was taken. In that event there would have been no actual depletion.

4. The Internal Revenue Code was amended in 1942 to allow carry-backs as well as carry-overs. 56 Stat. 798, 847.

See 26 C.F.R., 1940 Supp., 19.23(m)–10. That was the situation in the second Louisiana Delta case where the Tax Court held that petitioner had to restore to income in 1942 the percentage depletion deducted in 1941. Louisiana Delta Hardwood Lumber Co., Inc., v. Commissioner of Internal Revenue, 12 T.C. 576, affirmed 5 Cir., 183 F.2d 189. Quoting from Judge Hill's opinion in the Tax Court, at page 579: "Petitioner considers that no tax benefit was received from the percentage depletion deductions taken in 1941 because, though they were allowed in full, yet the deduction for the net operating loss carried forward from 1940 was thereby disallowed to the extent of the depletion deducted. Petitioner demonstrates that its income tax for 1941 would have been the same if the percentage depletion had not been taken, since the net operating loss carry-over would have then been allowed in full. The flaw in this argument is that petitioner actually received tax benefit from the percentage depletion taken in 1941, since it was fully effective to offset taxable income. It was the tax benefit of the full net operating loss carried forward from 1940 which petitioner failed to receive by its election to take percentage depletion. There is no such interrelationship between the net operating loss in 1940 and the percentage depletion on the oil leases in 1941 that would justify their being treated as component parts of a single transaction so that when the leases were surrendered in 1942 petitioner thereby realized no economic gain."

The rule established by the Tax Court in the Louisiana Delta cases is that in determining the amount of the net operating loss deduction in year two the amount of the carry-over from year one must be reduced by the excess of the percentage depletion actually deducted in year two over the amount the depletion deduction for that year would have been if depletion had been computed on a cost basis, regardless of the fact that the percentage depletion deducted in year two may have to be restored to income in a later year. We cannot agree with plaintiff that this construction defeats the basic purpose of the net operating loss deduction provisions.

On the contrary, we think the purpose of the law would be defeated by plaintiff's interpretation, which would allow a taxpayer to deduct a net operating loss carried over from a prior year even though it were absorbed by income not taxed in the year for which the return is being made. A net operating loss sustained in a prior year represents an economic loss only to the extent that it exceeds nontaxable income in the year in which the net operating loss deduction is sought to be made. Quoting from page 17 of House Report, 855, supra, the adjustments to the net operating loss carry-over required by Section 122(d) are "intended to prevent net losses from being used as a deduction by the taxpayer where he is not suffering from any economic loss by reason of the fact that his income contains nontaxable items (as in the case of percentage depletion, * * *)." To the extent that percentage depletion exceeds cost depletion a part of income may become nontaxable by reason of the percentage depletion deduction. See Virgilia Mining Corporation v. Commissioner of Internal Revenue, 7 T.C. 385, 386. It accords, therefore, with the spirit as well as the letter of the net operating loss deduction provisions of the Code to offset the excess of percentage depletion over cost depletion in year two against the net operating loss carry-over from year one.

We conclude, therefore, that the Regulations, under which the Commissioner acted were in accord with the Internal Revenue Code and that his action was in accord with the Regulations. Plaintiff's petition is dismissed.

HOWELL, MADDEN, WHITAKER and LITTLETON, Judges, concur.