**CRANBERRY IMPROVEMENT COMPANY, John C. Groome, Jr. and E. C. Dolbow, Sr., Liquidating Trustees**

v.

**Francis R. SMITH, Collector of Internal Revenue for the First District of Pennsylvania.**

Civ. A. No. 12132.

United States District Court,
E. D. Pennsylvania.

Nov. 1, 1954.

Charles S. Jacobs and Robert R. Batt (of Ballard, Spahr, Andrews & Ingersoll), Philadelphia, Pa., for plaintiffs.

W. Wilson White, U. S. Atty., Philadelphia, Pa., for defendant.

GANEY, District Judge.

This action was brought to recover income tax for the year 1943 and excess profits tax for 1944 totaling $25,810.71 alleged to have been erroneously paid by the taxpayer, a corporation which was in the business of mining coal.

Our problem is to determine the correct amount of the net loss sustained by the taxpayer in the year 1945 and the resultant net operating loss and unused excess profits credits of that year available for carry-back under § 122 of the Internal Revenue Code, 26 U.S.C. (1926 Ed.) § 122, to the years 1943 and 1944 respectively. The answer to this problem depends on whether or not the taxpayer is entitled to a deduction for depletion of its coal lands in the year 1945.

In its Federal tax returns for the years 1941 and 1942, the taxpayer reported a net operating loss of $10,982.49 and $103,331.09 respectively—or a total of $114,313.58. As of December 31, 1942, its adjusted basis for the unrecovered cost for depletion of its coal lands was $194,792.39.

In its tax returns for 1943, it reported pursuant to § 114(b) (4) of the Code its percentage depletion as $140,383.65, and cost depletion as $82,015.05, the dif-

ference between the two being $58,368.-60. It also made use of a net operating loss carry-over from the years 1941 and 1942 in the amount of $57,578.45 pursuant to § 122 of the Code. The latter figure was arrived at by the taxpayer's subtracting from $114,313.58, the amount of the net operating loss carry-over from 1941 and 1942, the amount of $58,-368.60, the excess of percentage over cost depletion for 1943. It also computed the basis of its coal lands as of December 31, 1943, to be $112,777.34, by deducting $82,015.05, the amount of adjusted cost depletion to which the taxpayer was entitled for 1943, from $194,792.39, the cost basis for its coal lands as of December 31, 1942.

In computing its net income for the year 1944, taxpayer deducted $87,657.11, the amount of percentage depletion for that year, from $112,777.34, the reported basis of its coal lands as of December 31, 1943, leaving $25,120.23 as the reported basis of its coal lands as of December 31, 1944.

The taxpayer, in its returns for 1945, computed a net operating loss for that year in the amount of $84,645.27. This sum included the amount of $25,120.23, the reported unrecovered cost as of the end of 1944. In this year it also recomputed, under § 122 of the Code, its 1943 income by making use of a net operating loss carry-back from the year 1945 in the amount of $84,645.27. As a result of this deduction, it filed a claim for refund of corporation income tax for the year 1943. It also recomputed its excess profits tax for the calendar year 1944 by taking into consideration an unused excess profits credit carry-back from the year 1945 in the amount of $37,349.66, and by reason thereof filed a claim for refund of excess profits tax for the year 1944.

The Commissioner of Internal Revenue gave as his reason for disallowing the claims for refunds that the taxpayer's reportable loss for the year 1945 was its net operating loss in the amount of $59,-525.04, and that this amount should not have been increased by the claimed amount of unrecovered cost because the cost of taxpayer's coal lands had been written off in 1944. In other words, the Commissioner contends that the ascertaining of the amount of the unrecovered cost from year to year, for depletion purposes, must be done without the benefit of, and is unaffected by, the adjustments required by § 122(d) (1). Thus the Commissioner states that the taxpayer's unrecovered cost is as follows: (a) As of the end of 1943 it was $54,408.74, the difference between $194,792.39, the undisputed amount of the unrecovered cost as of the end of 1942, and $140,383.65, the amount of percentage depletion for 1943, and (b) As of the end of 1944 it was zero, because the percentage depletion of $87,-657.11 for that year was more than enough to wipe out the remaining unrecovered cost of $54,408.74 as of the end of 1943. Consequently the Commissioner claims there was no unrecovered cost to be carried over into the year 1945.

Contrary to the Commissioner, the taxpayer contends that, until it is written off, the adjustment required by § 122(d) (1) is to be taken into consideration in determining the amount of the cost basis remaining at the end of each year. As authority for doing so, it cites § 113(b) (1) (B) of the Code, 26 U.S.C. (1926 Ed.) § 113(b) (1) (B). This section in pertinent part provided:

"(b) Adjusted basis. The adjusted basis for determining the gain or loss from the sale or other disposition of property, whenever acquired, shall be the basis determined under subsection (a), adjusted as hereinafter provided.

"(1) General rule. Proper adjustment in respect of the property shall in all cases be made—

\* \* \* \* \* \*

"(B) \* \* \* for \* \* \* depletion, to the extent allowed (but not less than the amount allowable) under this chapter or prior income tax laws. \* \* \*"

Since subsection (d) (1) of § 122 of the Code provides that "The deduction for depletion shall not exceed the amount which

would be allowable if computed without reference to \* \* \* percentage depletion under section 114(b) (2), (3), or (4);" taxpayer claims that in those years in which an adjustment is made under this subsection, the basis for unrecovered cost must likewise be adjusted pursuant to § 113(b) (1) (B).

We disagree. Before § 122 is applied, the taxpayer is first required to determine its net loss without any of the adjustments of subsection (d). It is only after a taxpayer takes advantage of the provisions of § 122 that the appropriate adjustments come into play. These adjustments are made only for the purpose of determining the net operating loss deduction. "Except for this purpose, section 122(d) does not \* \* \* exclude the percentage depletion deduction. \* \* \* section 122(d) (1) does not purport to exclude percentage depletion from a computation of the deduction available as prescribed by § 122(c), but merely limits it to 'the amount which would be allowable if computed without reference to \* \* \* percentage depletion'." Monroe Coal Mining Company v. Commissioner, 1946, 7 T.C. 1334, 1338. Also see Virgilia Mining Corporation v. Commissioner, 7 T.C. 385, 386, and Louisiana Delta Hardwood Lumber Company, Inc. v. Commissioner, 1946, 7 T.C. 994, 997.

The effect of ruling otherwise would be that the excess of percentage depletion which § 122(d) (1) requires be deducted from a net operating loss for purposes of a net operating loss deduction would not, in fact, be deducted. The reason for this is that the operating loss would be increased by an amount of the excess depletion as a result of the carry-back deduction which had been increased by that same amount as a result of the deduction brought forward to the year from which the carry-back deduction was taken. Hence the fact that a § 122(d) (1) adjustment is made does not mean that percentage depletion is not allowable under another section of the Code. And when percentage depletion is allowable, as it is in this action, the basis for unrecovered cost must be adjusted to the extent of, and not less than, that amount.

Accordingly, judgment may be entered in favor of the defendant.