222 F.2d 706
 CRANBERRY IMPROVEMENT COMPANY, John C. Groome, Jr., and E. C. Dolbow, Sr., Liquidating Trustees, Appellants,
v.
Francis R. SMITH, Collector of Internal Revenue for the First District of Pennsylvania.
 No. 11514.
 United States Court of Appeals Third Circuit.
 Argued March 22, 1955.
 Decided May 20, 1955.
 
 Charles S. Jacobs, Philadelphia, Pa., (William R. Spofford, Charles S. Jacobs, Robert R. Batt, Philadelphia, Pa., Ballard, Spahr, Andrews & Ingersoll, Philadelphia, Pa., on the brief), for appellants.
 H. Brian Holland, Asst. Atty. Gen. (Ellis N. Slack, I. Henry Kutz, Sp. Assts. to Atty. Gen., W. Wilson White, U. S. Atty., Philadelphia, Pa., on the brief), for appellee.
 Before MARIS, GOODRICH and KALODNER, Circuit Judges.
 MARIS, Circuit Judge.
 
 
 1
 The plaintiff, Cranberry Improvement Company, a Pennsylvania corporation, sued the Collector of Internal Revenue in the District Court for the Eastern District of Pennsylvania for refund of 1943 income tax paid in the amount of $9,587.81 and 1944 excess profits tax paid in the amount of $16,222.90, together with interest in the sum of $1,887.74, a total of $27,698.45. The case was tried without a jury upon stipulated facts. The undisputed facts as appears from the stipulation of facts and the findings of fact of the district court are as follows:
 
 
 2
 At all times material the plaintiff was engaged in the mining and sale of coal and on December 31, 1942, the adjusted cost basis for depletion of its coal lands was $194,792.39. The plaintiff maintained its books and filed its returns on the calendar year and accrual basis of accounting. For it the years 1943 and 1944 were years of profit preceded by the loss years 1941 and 1942, and succeeded by the loss year 1945. In computing its net income for the calendar year 1943 the plaintiff deducted depletion on the percentage basis in the amount of $140,383.65. It also deducted a net operating loss in the amount of $57,578.45 representing net operating loss carry-overs from 1941 and 1942. This figure of $57,578.45 for the 1943 net operating loss deduction was arrived at, so far as pertinent, as follows:
 
 
 3
 The net operating loss for 1941 was $10,982.49 and for 1942 was $103,331.09, or a total of $114,313.58. Depletion for 1943, if figured on the cost basis, was $82,015.05. Thus, the difference between percentage depletion for 1943 in the amount of $140,383.65 and the cost depletion of $82,015.05 was $58,368.60. Pursuant to the provisions of section 122(c) and (d) (1) of the Internal Revenue Code of 1939, 26 U.S.C. § 122(c), (d) (1), the net operating loss carry-overs from 1941 and 1942 in the aggregate amount of $114,313.58 were reduced by this difference between percentage and cost depletion leaving the amount of $57,578.45, as the net operating loss deduction which was allowed in the plaintiff's 1943 return.
 
 
 4
 In computing the cost basis for its coal lands as of December 31, 1943, the plaintiff asserts it is entitled to deduct, not the amount of its percentage depletion, namely $140,383.65, but the smaller amount of cost depletion, namely $82,015.05, which figure had been used in computing its 1943 net operating loss deduction. Thus, according to the plaintiff's computation, the adjusted cost basis for its coal lands as of December 31, 1943, was $112,777.34, arrived at by deducting cost depletion of $82,015.05 from $194,792.39, the agreed cost basis for its coal lands as of December 31, 1942.
 
 
 5
 In computing its net income for the year 1944, the plaintiff deducted $87,657.11, the amount of percentage depletion for that year, from $112,777.34, the alleged basis of its coal lands as of December 31, 1943, leaving $25,120.23 as the alleged basis of its coal lands as of December 31, 1944. For 1945 the plaintiff claimed a deduction for cost basis depletion in this amount of $25,120.23 being the balance of depleted cost of its coal lands. The year 1945, being a loss year, the inclusion of this sum increased its net operating loss for the year in that amount. The total net operating loss claimed by the plaintiff for 1945 was $84,645.27.
 
 
 6
 The plaintiff bases its claim for refund of 1943 income tax upon the carry-back of this alleged net operating loss from the year 1945 to the year 1943. Similarly, if the plaintiff has correctly computed its net operating loss in the amount of $84,645.27 its unused excess profits credit carry-back from the year 1945 to 1944 will be increased, thus forming the basis for the plaintiff's claim for refund of excess profits tax for the year 1944.
 
 
 7
 On the other hand it is stipulated that the ground for disallowance by the Commissioner of Internal Revenue of these two refund claims goes back to the adjustment of the cost basis for the coal lands as of December 31, 1943. Thus, the Commissioner asserted that the amount allowed for depletion to be deducted from the cost basis of $194,792.39 as of the end of 1942 is the 1943 percentage depletion of $140,383.65 and not the cost depletion of $82,015.05 used in computing the 1943 net operating loss deduction. Subtracting $140,383.65 from $194,792.39 leaves the adjusted cost basis as $54,408.74 on December 31, 1943. Since the undisputed depletion deduction for 1944 was percentage depletion in the sum of $87,657.11, no adjusted cost basis remained as of December 31, 1944. The consequence of the foregoing contention of the Commissioner is that since no adjusted cost basis of the coal lands remained as of December 31, 1944, no sum could properly be claimed for cost depletion in that year. Hence, according to the Commissioner's holding, the plaintiff's claimed net operating loss for 1945 was properly $59,525.04 and not $84,645.27, the difference being the deduction for cost depletion in the amount of $25,120.23 asserted by plaintiff. In the event that the 1945 net operating loss is in the smaller amount claimed by the Commissioner, no refund is due plaintiff.
 
 
 8
 The District Court sustained the Commissioner's contentions and entered judgment in favor of the Collector. 126 F. Supp. 822. This appeal by the plaintiff followed. Although the case involves complicated facts it raises but a single issue. This is whether the 1943 depletion allowance which section 113(b) (1) (B) of the Internal Revenue Code of 1939, 26 U.S.C. § 113(b) (1) (B), required the plaintiff to deduct from the cost basis of its coal lands at the end of 1942 in order to determine their adjusted cost basis at the end of 1943 was $140,383.65, the percentage depletion which section 114(b) (4) (A) of the Code, 26 U.S.C. § 114(b) (4) (A), required the plaintiff to take in computing its net income for the year 1943 or $82,015.05, the lower cost depletion which was used as a factor in computing the plaintiff's net operating loss deduction for 1943.
 
 
 9
 We think that the District Court correctly decided that the cost basis of the plaintiff's coal lands was to be adjusted by deduction of the percentage depletion and not the cost depletion. Section 113 (b) (1) (B) of the Code expressly requires that for the purpose of adjusting the basis of property, account shall be taken of "depletion, to the extent allowed (but not less than the amount allowable)". Sections 23(m), 26 U.S.C. § 23 (m), and 114(b) (4) of the Code required the plaintiff to take as a deduction in computing its net income for 1943 percentage depletion or cost depletion, whichever was higher. 4 Mertens, Law of Federal Income Taxation, 1954 Rev., sec. 24.35. This the plaintiff did in its 1943 return and the deduction offset otherwise taxable income for that year. The deduction so taken was, therefore, the depletion allowed and allowable for that year within the meaning of section 113 (b) (1) (B).
 
 
 10
 The fact that under section 122 the plaintiff's net operating loss carry-over to 1943 from prior years of loss was reduced by the difference between its percentage depletion and cost depletion for that year is quite immaterial in computing the basis of plaintiff's coal lands at the end of that year. The net operating loss provisions of the Code create an exception to the annual accounting system of the law by permitting, in effect, gains and losses to be averaged over a limited number of years. But in permitting this Congress wished to insure that any loss carried over to another year should be a real economic loss. It was apparent that percentage depletion could return more than cost and thus actual income might become nontaxable by reason of such deduction. H.Rep.No. 855, 76th Cong., 1st Sess., pp. 17-18; Magale v. United States, 1950, 93 F.Supp. 1004, 118 Ct.Cl. 183; Virgilia Mining Corporation v. Commissioner, 1946, 7 T.C. 385. It was to prevent this that section 122(d) (1) provided that a net operating loss carried over to another year should be reduced by the amount of any excess of percentage depletion over cost depletion in that year. Compare Philadelphia Fire & Marine Ins. Co. v. United States, 1933, 3 F.Supp. 655, 77 Ct.Cl. 764, certiorari denied 290 U.S. 703, 54 S.Ct. 371, 78 L. Ed. 604. We think it is clear that in requiring such a reduction by section 122 (d) (1) Congress intended merely to limit the amount of the net operating loss deduction and not to affect the depletion deduction which is required to be taken by section 114(b) (4) and to be applied in reduction of the cost basis of the property by section 113(b) (1) (B). Virgilia Mining Corporation v. Commissioner, supra; Louisiana Delta Hardwood Lumber Co. v. Commissioner, 1946, 7 T.C. 994.
 
 
 11
 The judgment of the district court will be affirmed.