T. Reed VREELAND and Diana D. Vreeland

v.

UNITED STATES.

No. 289–55.

United States Court of Claims.
May 3, 1961.

George F. Smith, Jr., Washington, D. C., for plaintiffs.

Joel N. Simon, Silver Spring, Md., with whom was Asst. Atty. Gen. Louis F. Oberdorfer, Washington, D. C., for defendant. James P. Garland, Lyle M. Turner and Jerome S. Hertz, Washington, D. C., were on the brief.

JONES, Chief Judge.

This is a suit for the refund of Federal income taxes for the year 1946. The plaintiffs claim that they had a net operating loss in 1948 which they should be permitted to carry back to 1946 as a net operating loss deduction for 1946. The defendant disputes the 1948 loss.

The facts have been stipulated. The plaintiffs, who are husband and wife, filed

a joint Federal income tax return for the year 1946 reporting net income of $23,760 and a tax liability of $7,900.[1] The plaintiffs filed separate income tax returns for 1947. Mrs. Vreeland received no capital gain and sustained no capital loss for 1947. The return filed by Mr. Vreeland for 1947 disclosed the following entries:

Short-term capital loss ...... $1,150.00
Long-term capital loss ...... 22,700.00

Mr. Vreeland had no capital gain for 1947.

The statute then in effect provided the following treatment for gains and losses from the sale or exchange of capital assets:

"§ 117(b) In the case of a taxpayer, other than a corporation, only the following percentages of the gain or loss recognized upon the sale or exchange of a capital asset shall be taken into account in computing net capital gain, net capital loss, and net income:

"100 per centum if the capital asset has been held for not more than 6 months;

"50 per centum if the capital asset has been held for more than 6 months." 26 U.S.C. (I.R.C.1939) § 117(b) (1946 ed.)

Accordingly, in computing his income tax liability for 1947, Mr. Vreeland took into account only 50 percent of the long-term capital loss he actually sustained during 1947. This resulted in what we shall call an "adjusted capital loss" [2] for 1947 of $12,500.

The Code directed the allowance of this adjusted capital loss in computing the annual tax liability as follows:

"§ 117(d) (2) In the case of a taxpayer, other than a corporation, losses from sales or exchanges of capital assets [as adjusted under § 117(b) ] shall be allowed only to the extent of the gains from such sales or exchanges, plus the net income of the taxpayer of $1,000, whichever is smaller. * * * " 26 U.S.C. (I.R. C.1939) § 117(d) (2) (1946).

Mr. Vreeland had no capital gain in 1947 against which he could offset his adjusted capital loss. Thus, the only tax benefit he obtained from his capital losses was by offset against $1,000 of ordinary income. The adjusted capital loss less the $1,000 offset to ordinary income left Mr. Vreeland with a "net capital loss" [3] of $11,500.

The Commissioner of Internal Revenue acknowledges that both Mr. and Mrs. Vreeland computed their individual tax liabilities for 1947 correctly.[4]

In 1948, the plaintiffs filed a joint tax return showing that they had actually received a net long-term capital gain of $25,400. Once again they made the adjustment required by § 117(b) of the Code and took into account only 50 percent of their actual net long-term capital gain. This resulted in what we shall call an "adjusted capital gain" [5] of $12,700. Then by virtue of § 117(e) of the Code, 26 U.S.C. (I.R.C. 1939) § 117(e) (1946 ed.), the plaintiffs carried forward into 1948, as an offset to 1948 adjusted capital gain, the net capital loss of $11,500 which Mr. Vreeland had sustained in 1947.[6] Capital gains which where thus

---

1. The figures throughout have been approximated for convenience.

2. *Adjusted capital loss* is the sum of the short-term capital loss and 50 percent of the long-term capital loss.

3. Defined by the Code, 26 U.S.C. (I.R.C. 1939) § 117(a) (11) (1946 ed.).

4. The Commissioner made some adjustments to which the plaintiffs agreed and which are not involved in this dispute.

5. *Adjusted capital gain* is the sum of the short-term capital gain and 50 percent of the long-term capital gain. See footnote 2, supra.

6. The 1947 net capital loss which was carried over to 1948 under § 117(e) was the loss by the husband, whereas the return filed in 1948 was for both husband and wife. However, in view of Treas.Reg.

reported as taxable income in 1948 were $12,700 less the capital loss carry-over of $11,500, or $1,200. The Vreelands sustained other ordinary losses of $13,800 which were subtracted from the taxable capital gains to give a net loss for 1948 income tax purposes of $12,600. The Commissioner acknowledges that the plaintiffs properly calculated their 1948 income tax liability.

The computations for 1947 and 1948 may be summarized as follows:

### 1947

#### Mr. Vreeland

| | | |
|---|---|---|
| Short-term capital loss | | $1,150 |
| Long-term capital loss | $22,700 | |
| Less § 117(b) adjustment of 50 percent | —11,350 | |
| 50 percent of long-term capital loss | 11,350 | 11,350 |
| Adjusted capital loss | | 12,500 |
| Less offset allowable against ordinary income | | —1,000 |
| Net capital loss | | ($11,500) |

### 1948

#### Mr. and Mrs. Vreeland

| | | |
|---|---|---|
| Net long-term capital gain | $25,400 | |
| Less § 117(b) adjustment of 50 percent | —12,700 | |
| Adjusted capital gain | 12,700 | $12,700 |
| Less capital loss carry-over from 1947 | | —11,500 |
| Capital gains reported as taxable income in 1948 | | 1,200 |
| Less ordinary noncapital losses | | —13,800 |
| Net loss for the year 1948 | | ($12,600) |

In March of 1949 the plaintiffs filed an application for a tentative carry-back adjustment for the calendar year 1946. This application was denied. Thereafter, the plaintiffs filed a joint claim for refund of 1946 income taxes. The plaintiffs alleged in their claim that their 1948 income tax return showed a net loss of $12,600 which could be converted into a "net operating loss" under § 122 of the Code, 26 U.S.C. (I.R.C.1939) § 122 (1946 ed.), and carried back to 1946 as a net operating loss deduction to reduce plaintiffs' 1946 tax liability.

The revenue agent who examined the claim for refund recomputed the claimed net operating loss. He added back to the $12,600 net loss reported by the plaintiffs in 1948 the $12,700 long-term capital gain which had not been taken into account in the 1948 income tax computations because of the adjustment permitted by § 117(b) of the Code. This addition reestablished 1948 long-term capital gains at 100 percent of their actual value. The agent left unchanged in amount the $11,500 capital loss carry-over from 1947 which represented only 50 percent of the net long-term capital loss actually sustained by Mr. Vreeland in 1947. The agent concluded that while the plaintiffs had correctly reported a net loss of $12,-

111, promulgated under the 1939 Code, Sec. 29.117–5(b), this fact has no material bearing on the outcome of this case.

600 for 1948 income tax purposes, this was merely a technical tax loss; plaintiffs had actually received in 1948 a net sum of $100 in real economic gain.

### 1948

### Revenue Agent's Net Operating Loss Calculations

| | | |
|---|---:|---:|
| Net long-term capital gain included in 1948 return . | $12,700 | |
| Net long-term capital gain not taken into account in the 1948 return because of the § 117(b) adjustment ....................................... | 12,700 | |
| Net long-term capital gain *actually received* in 1948 ........................................ | 25,400 | $25,400 |
| Less § 117(e) capital loss carry-over from 1947 ..................................... | —11,500 | |
| Less ordinary noncapital losses actually sustained in 1948 .................................. | —13,800 | |
| | —25,300 | —25,300 |
| Actual net *economic gain* for 1948 ...................... | | $100 |

◆

On the basis of the revenue agent's report, the Commissioner denied the plaintiffs' claim for refund. Shortly thereafter the plaintiffs filed suit for refund in this court.

All are agreed that the plaintiffs properly computed their annual tax liabilities, under all applicable statutes, for the years 1946, 1947, and 1948. However, the computations for determining annual tax liability are different from the computations for determining net operating loss. The problem in this case involves the proper method of computing a net operating loss for the year 1948. The plaintiffs contend that the Commissioner in computing their "net operating loss" for 1948 was inconsistent when he included 1948 net capital gains at 100 percent of their actual value but included 1947 net capital losses, carried over into 1948, at only 50 percent of their actual value. The specific error alleged was the Commissioner's failure to include in the computation of 1948 "net operating loss" the excess of plaintiffs' 1947 long-term capital losses over long-term capital gains at 100 percent of actual value.

■ The Code sections controlling this problem are very complex [7] and are best interpreted in the light of general tax policy and the over-all intent of the Congress. "It is the essence of any system of taxation that it should produce revenue ascertainable, and payable to the government, at regular intervals." Burnet v. Sanford & Brooks Co., 1931, 282 U.S. 359, at page 365, 51 S.Ct. 150, 152, 75 L.Ed. 383. Basic to our income tax structure is the interval of the year. All gains and losses must be computed annually. United States v. Lewis, 1951, 340 U.S. 590, 71 S.Ct. 522, 95 L.Ed. 560. But this annual accounting requirement lays heavy emphasis on the timing of the receipt of income, and can produce inequality of the total tax burden among those with similar income. Adhering to the annual accounting rule, a "business with alternating profit and loss is required to pay higher taxes over a period of years than a business with stable profits, although the av-

---

**7.** Section 122 of the Code has been described as "rather opaquely worded" by Justice Frankfurter. Lewyt Corp. v. Commissioner, 1955, 349 U.S. 237, at page 243, 75 S.Ct. 736, 741, 99 L.Ed. 1029.

erage net income of the two firms is equal." H.R.Rep. No. 855, 76th Cong. 1st Sess. 9; 1939–2 Cum.Bull. 510. For example, a taxpayer might engage in a 2-year commercial venture and sustain a $10,000 loss the first year and a $15,000 gain the next. In a strict annual-accounting system, he would be required to pay a tax on $15,000 over the 2-year period. Treating each year as a separate tax unit would prevent any averaging of the total gains with the total losses from the venture. Another taxpayer in a similar 2-year venture may have a $5,000 loss and a $7,500 gain in each of the 2 years. The second taxpayer, by being able to set off losses against gains would pay a tax on only $5,000 over the 2-year period. The total profits from the ventures were identical but the tax burdens would be markedly different.

The Congress has recognized this specific tax problem and has relaxed the annual accounting requirement in certain prescribed areas. It has done this by providing taxpayers with devices which cut across the traditional accounting period boundaries. However, these devices, such as the capital loss carry-over and the net operating loss carry-over and carry-back, are exceptions to the annual accounting rule and so must be limited in use to their intended purposes. Generally, these carry-overs are designed to permit taxpayers to set off their lean years against their lush years, but they are not intended to permit, and do not permit, the averaging of all gains and losses over a period of years. Libson Shops, Inc. v. Koehler, 1957, 353 U.S. 382, 77 S.Ct. 990, 1 L.Ed.2d 924. With this in mind we turn to the carry-over provisions.

The computation of a net operating loss requires complex adjustments to the annual income tax return. These adjustments are designed to reflect the true economic status of a taxpayer for one particular year. For the most part they prevent the deduction of losses which are actually absorbed by untaxed income. Section 122 of the Code is greatly detailed but provides in part as follows:

"§ 122(a) As used in this section, the term 'net operating loss' means the excess of the deductions allowed by this chapter over the gross income, with the exceptions, additions, and limitations provided in subsection (d)". 26 U.S.C. (I.R.C.1939) § 122(a) (1946 ed.).

"The exceptions and limitations provided in section 122(d) are for the purpose of insuring that only an *economic loss* will be taken into account." H.R.Rep. No. 855, 76th Cong., 1st Sess. 15 (1939); 1939–2 Cum.Bull. 517.[8] "It is only the excess of deductions over *total income*, including income which is ordinarily excluded from the calculation of taxable income, that should be counted as a loss for the purpose of offsetting income in another period." T.D. Rep., Business Loss Offsets, Press Serv. No. S–505 (Oct. 24, 1947).

The statute requires that in computing net operating gain or loss, wholly tax-exempt interest is included; the deduction for depletion is limited; nonbusiness expenses are deductible only to the extent of nonbusiness income,[9] and capital transactions are treated as follows:

"§ 122(d) (4) Gains and losses from sales or exchanges of capital assets shall be taken into account without regard to the provisions of section 117(b). As so computed the amount deductible on account of such losses shall not exceed the amount includible on account of such gains." 26 U.S.C. (I.R.C.1939) § 122(d) (4) (1946 ed.).

It is this last subsection around which the present dispute is centered. The parties are agreed that in calculating the plaintiffs' net operating loss for 1948 all long-term capital gains received in 1948 must be stated at full value without re-

---

**8.** See opinion of this court in Magale v. United States, 1950, 93 F.Supp. 1004, 118 Ct.Cl. 183, at page 193.

**9.** See Regs. 118, § 39.122–3(4) (1953).

gard to the 50 percent limitation of § 117(b). The plaintiffs go further, however, and state that their net capital loss for 1947 ought to be recomputed with 1947 long-term capital gains and losses stated at full value because only this would give their true economic loss for 1947. And, they continue, it is this recomputed net capital loss which ought to be carried forward and allowed in the 1948 net operating loss computations.

We believe that the plaintiffs have failed to distinguish sufficiently between the net capital loss of § 117 and the net operating loss of § 122. Close consideration of the interrelationship of these two sections reveals the flaw in the plaintiffs' position. In 1948, capital gains were given preferential treatment, but capital losses were a double disadvantage. At best, capital losses gave the taxpayer only one-half the tax benefit of ordinary losses. (Capital losses were only taken into account at 50 percent.) At worst, when there were no capital gains to offset, capital losses (in excess of $2,000) could not be used at all and their entire potential tax benefit was lost. This restriction on the use of capital losses only to offset capital gains created serious problems, and these problems served to complement the problems created by the annual accounting requirement. It was always difficult to match up capital gains and losses from a variety of transactions, but the cyclic nature of many business investments frequently made it impossible to get capital gains and losses to fall in the same year.

■ To ameliorate these difficulties, the Congress provided that capital losses from one year which exceeded capital gains for that year could be carried forward to offset capital gains in each of the 5 succeeding years, for annual income tax purposes. The Congress went even further, however, and provided that a *net capital loss* sustained in one year could be used to establish a *net operating loss* in a subsequent year. This is the sole exception to the rule that a net operating loss

is to be computed on the basis of economic activities occurring in a single tax year.[10] Thus, we have this situation:

1. A 1947 net capital loss may *not* be used to establish a 1947 net operating loss because § 122(d) (4) prohibits the use of capital losses in excess of capital gains in computing a net operating loss for a given year.

2. Even if a 1947 net operating loss could be based upon a 1947 net capital loss, and thus represent 100 percent of the real economic loss for 1947, it may *not* be carried forward to establish a net operating loss in 1948. This is specifically prohibited by § 122(d) (3).

3. A 1947 net capital loss *may* be carried forward and used in a limited manner to establish a net operating loss in 1948.

The plaintiffs would disregard these distinctions and create a hybrid carry-over embodying the most favorable characteristics of both the capital loss and the net operating loss carry-over. This hybrid carry-over would effect a complete averaging of 1947 and 1948 capital gains and losses and establish a net operating loss in 1948. Yet it is apparent that the allowance of a 1947 net capital loss in the establishment of a 1948 net operating loss is a remarkable exception to the congressional pattern in creating the net operating loss carry-over, which in turn is an exception to the fundamental annual accounting requirement. In our view, in such an exceptional situation, the statutory procedure must be followed very closely. A 1947 capital loss is relevant to a 1948 economic loss only so far as the Code makes it so.

■■ Section 117 describes the computation of a net capital loss carry-over in the following manner:

"§ 117(b) In the case of a taxpayer, other than a corporation, only the following percentages of the gain or loss recognized upon the sale or exchange of a capital asset shall be

10. See in this regard Lewyt Corp. v. Commissioner, 1955, 349 U.S. 237, 75 S.Ct. 736.

taken into account in computing * * * net capital loss * * *:

"100 per centum if the capital asset has been held for not more than 6 months;

"50 per centum if the capital asset has been held for more than 6 months. * * *

"§ 117(a) (11) The term 'net capital loss' means the excess of the losses from sales or exchanges of capital assets over the sum allowed under subsection (d). [$1,000] * * *

"§ 117(e) If for any taxable year beginning after December 31, 1941, the taxpayer has a net capital loss, the amount thereof shall be a *short-term capital loss* in each of the five succeeding taxable years * * *." [Emphasis supplied.]   26 U.S.C. (I.R.C.1939) § 117 (1946 ed.).

We agree with the Government that the policy announced by these provisions was deliberately chosen by the Congress. The limitations on the deductibility of long-term capital losses were intended "to compensate the Government for the reduced rate applicable to capital gains." H.R. Rep. No. 2333, 77th Cong. 2d Sess. 30 (1942); 1942–2 Cum.Bull. 372, 397. Furthermore, § 117(e) is set out as the sole and determining authority for carrying capital losses forward. This section specifically states that a *net capital loss* "shall be a *short-term* capital loss in each of the five succeeding taxable years." With such clear language there can be no dispute that for the purpose of computing income tax liability for a particular year

a net capital loss from a previous year should be carried over as a short-term capital loss. In addition, we believe that the Congress intended to indicate by this section that a net capital loss in one year should be a short-term capital loss in succeeding years for *all* purposes, specifically for the purpose of establishing a net operating loss in such succeeding years. Were the intent otherwise, the Congress would have had to provide a method whereby we could go behind a capital loss carry-over to determine what part of it arose from short-term and what part arose from long-term capital losses. It is obvious that the Congress has not done this.

■■   Since the first sentence of § 122 (d) (4) applies only to long-term capital gains and losses, we conclude that it has no effect on an item of short-term capital loss such as a capital loss carry-over. Once computed under § 117, the amount of the plaintiffs' 1947 capital loss carry-over is fixed and may not be increased for 1948. See Peters v. United States, 1956, 26 T.C. 270.[11] It appears that the Fifth Circuit reached the same conclusion on the identical point. Wasson v. United States, 51 AFTR 1733 (U.S.Dist.Ct. N.D.Tex., 1956), affirmed on this point 5 Cir., 250 F.2d 826, certiorari denied 1958, 358 U.S. 815, 79 S.Ct. 22, 3 L.Ed.2d 57.

The Commissioner of Internal Revenue properly denied the plaintiffs' claim for refund. The petition will be dismissed.

It is so ordered.

DURFEE, LARAMORE, MADDEN and WHITAKER, Judges, concur.

---

11. See also 26 U.S.C. (I.R.C. 1954) § 1212 which describes similar treatment of a net capital loss in a situation analogous to the instant case.